UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAULA FRANKLIN,

    Plaintiff,                                    Civil Action No. 08-13620

v.                                            HON. VICTORIA A. ROBERTS
                                                U.S. District Judge
                                                HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Paula Franklin brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment be GRANTED and Plaintiff's Motion for Summary Judgment DENIED.

## PROCEDURAL HISTORY

On August 22, 2005, Plaintiff filed concurrent applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging an onset date of October 30, 2004 (Tr. 64, 379). After the initial denial of the claim, Plaintiff timely

requested an administrative hearing, held on October 11, 2007 in Flint, Michigan with Administrative Law Judge ("ALJ") Philip E. Moulaison presiding from Phoenix, Arizona by teleconference (Tr. 388, 390). Plaintiff, represented by attorney Mikel Lupisella, testified, as did vocational expert ("VE") Stephanee Leech (Tr. 391-400, 400-405). On January 24, 2008, ALJ Moulaison, finding that the Plaintiff's polysubstance dependence disorder was a material contributing factor to the determination of disability, concluded she was capable of performing her past relevant work. (Tr. 23-24). On June 19, 2008, the Appeals Council denied review (Tr. 3-5). Plaintiff filed suit in this Court on August 20, 2008.

## BACKGROUND FACTS

Plaintiff, born on May 20, 1955, was 52 at the time of the administrative decision. (Tr. 16, 64). She completed 11th grade, working previously as a home health attendant, hostess, inventory clerk, maintenance worker, cleaner, maintenance supervisor, meat cutter, preparation cook, motel housekeeper, and gluer (Tr. 402-403). Plaintiff's DIB application alleges disability as a result of various physical and mental conditions (Tr. 64).

### A.     Plaintiff's Testimony

Plaintiff testified that she stood 5 feet 7 inches and weighed 200 pounds (Tr. 392). She reported that her most disabling condition was her mental instability, including depression (Tr.294). She also alleged limitations as a result of old gunshot wounds to the lower legs which cause her feet to swell and prevent her from standing for too long (Tr. 394). Plaintiff reported that she was currently receiving psychiatric counseling and taking Lisinopril, Lexapro, Wellbutrin XL, Depakote, Prolixin, and Risperdal (Tr. 394-395).

Plaintiff later clarified that she started to take Prolixin but stopped on doctor's orders due to unspecified side effects (Tr. 398).

Plaintiff stated that she was unable to climb stairs without a cane, walk further than a block and a half, and stand for longer than 20 minutes (Tr. 395). She alleged squatting limitations, but denied difficulty stooping (Tr. 396). She also reported numbness below the calf and pain in her lower legs, adding that she obtained relief by soaking and keeping her legs elevated (Tr. 397).

In addition to experiencing frequent bouts of depression, Plaintiff alleged that since sustaining a 2003 head injury, she had blacked out on multiple occasions (Tr. 397). Plaintiff reported having suicidal thoughts, outbursts of anger, and bouts of forgetfulness (Tr. 397-398) Plaintiff concluded her testimony by admitting former alcohol and cocaine abuse, but reported being "clean" for over three and a half years (Tr. 399).

  **B.**  **Medical Evidence**

  **1.**  **Treating Sources**

May 2003 treating notes state that Plaintiff, seeking treatment for bronchitis, also experienced depression and fatigue (Tr. 356, 361). February 2005 treating notes from Genesee County Community Mental Heath indicate that Plaintiff experienced mood swings, depression, suicidal tendencies and problems in both legs (Tr. 318). Plaintiff reported past alcohol, cocaine and marijuana abuse, but denied current use (Tr. 321). She also reported that in 2004, she had attempted suicide on three separate occasions (Tr. 323).

February 24, 2005, treating notes from Hurley Medical center indicate that Plaintiff

overdosed on pain pills, alcohol, and crack cocaine three weeks prior (Tr. 338). Plaintiff tested positive for cocaine use (Tr. 340). Treating notes state "major depression r/o bipolar" along with a separate diagnosis of polysubstance abuse and a GAF of 20 (Tr. 342).[1] Treating notes from the same period from New Passages indicated possible substance abuse or dependence and initially diagnosed Plaintiff as bipolar with a GAF of 30 (Tr. 309, 311).[2] A concurrent psychiatric evaluation at New Passages noted that Plaintiff was "pre-occupied with [losing] apartment, abuse by male friend and suicidal ideas" (Tr. 273). The diagnosis, noting legal problems and no support or health care, was "major depression with psychosis" with a GAF of 20 (Tr. 275, 276). The notes also indicate that Plaintiff was sober for two years until she began to use cocaine two weeks prior, also noting suicidal ideation, depression, and impaired judgment (Tr. 317). Medical records from the same period also state that Plaintiff tested positive for cocaine and was given individual supportive therapy (Tr. 336).

On February 28, 2005, Plaintiff, discharged from New Passages, was again diagnosed with a "major depressive disorder, rule out bipolar disorder; polysubstance abuse" with a

---

[1] A GAF score of 11-20 indicates some danger of hurting self or others OR occasionally fails to maintain minimal personal hygiene OR gross impairment in communication. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR*)(4th ed. 2000).

[2] A Global Assessment of Functioning ("GAF") score of 21-30 indicates that behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment OR inability to function in almost all areas. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR*)(4th ed. 2000).

GAF of 50 (Tr. 335).[3] Discharge notes state that Plaintiff was on probation for drug possession (Tr. 335). Plaintiff was prescribed Lisinopril, Lexapro, Wellbutrin, Depakote, and Prolixin (Tr. 336).

In March 2005, treating notes indicate that Plaintiff complained about chronic leg pain and depression, also noting that Plaintiff claimed she was a "social drinker," denying cocaine use for the past two years (Tr. 300). On May 12, 2005, treatment notes from a New Passages medication review indicated Plaintiff reported being out of medication for three to four weeks and was assessed a GAF of 60 on medication with no change to the treatment plan (Tr. 195, 197).[4] In July 2005, another medication review by New Passages noted Plaintiff took Lexapro sporadically, but indicated no change to the treatment plan and a GAF assessment of 60 (Tr. 193).

### 2.     Non-treating Sources

Plaintiff has received two sets of physical and psychological assessments. While no reason is given for the second set of assessments, it is noted that the first was requested by Examiner Thanh-my Nguyen and the second set was requested by Examiner Lauralyn

---

[3]A GAF score of 41-50 indicates serious symptoms OR serious impairment with social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR*)(4th ed. 2000).

[4]A GAF score of 51-60 indicates moderate symptoms OR moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR*)(4th ed. 2000).

Keyton (Tr. 219, 242, 263).

### a. Physical Assessments

A January 2005 consultive physical examination on behalf of the SSA by Neil Friedman, M.D., found a history of a single gunshot wound to each leg, with corresponding bullet entry and exit points, noting that Plaintiff complained of swelling and numbness in her lower extremities (Tr. 286-287). He noted no visual deformities of the spine and upper extremities, with Plaintiff having full range of motion except for limited shoulder adduction (Tr. 287). Dr. Friedman also noted that Plaintiff appeared to have difficulty picking up a small object from the doctor's palm, "appear[ing] to intentionally drop the small object on her initial attempt but then is able to easily pick it up on the second attempt on both the right and left" (Tr. 287). He also noted no visual deformities in the lower extremities aside from scars resulting from the gunshot wounds, diminished but symmetric deep tendon reflexes, and full range of motion in both legs (Tr. 287). He also observed the plaintiff "ambulating within the office, as well as within the examining room, without the use of an assistive device," and with a "grossly normal gait." (Tr. 287).

In March 2005, a Physical Residual Functional Capacity Assessment found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for up to six hours in an eight-hour workday; and a limited ability to push or pull with the upper extremities (Tr. 234). Plaintiff was precluded from climbing ladders, ropes or scaffolds, but deemed able to climb ramps or stairs, balance, stoop, kneel, crouch and crawl on a *frequent* basis (Tr.235). The Assessment found no manipulative, visual, communicative, or

environmental limitations (Tr. 236-237). The Assessment noted that while Plaintiff had a cane, she was not using it and concluded that she was partially credible (Tr. 238).

In November 2005, Dr. Friedman conducted a second consultive physical examination (Tr. 281). He concluded that Plaintiff's symptoms had worsened since the prior visit finding no differences in her range of motion, but noting her report of increased discomfort of all major joints (Tr. 281, 282). He observed that Plaintiff used a cane while walking through the office, but was able to move short distances within the examination room without assistance and walked with a normal gait (Tr. 282).

The same month, the second Physical Residual Functional Capacity Assessment found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for up to six hours in an eight-hour workday; and an unlimited ability to push or pull with upper or lower extremities (Tr. 226). Plaintiff was deemed able to balance *frequently*, but climb, stoop, kneel, crouch, and crawl *occasionally* (Tr. 227). The Assessment found no manipulative, visual or communicative limitations, but environmental limitations to avoid *moderate* exposure to vibrations and hazards, such as height or machinery (Tr. 229). The Assessment concluded that Plaintiff's allegations were partially supported by the medical records (Tr. 230).

### b. Psychological Assessments

In December, 2004, a psychological examination by Kelly McGlothlin, Psy.S., and Marianne Goergen, Psy.D., recorded that Plaintiff indicated that she cried daily, felt hopeless, had low self esteem, and pain in her legs, resulting in agoraphobic-like tendencies (Tr. 350).

Plaintiff reported that she had been proscribed Prozac, but forgot to take it (Tr. 350). Examination notes state that Plaintiff did not seem to have constant contact with reality, exhibiting unusual behavior, including a tendency to exaggerate symptoms, and poor insight (Tr. 351). Plaintiff stated she had suicidal thoughts along with auditory and visual hallucinations (Tr. 351). Due to Plaintiff's atypical behavior, Dr. Goergen deferred diagnosis with a guarded prognosis, but following communication with the SSA, the psychiatrists assigned plaintiff a GAF of 45, with a diagnosis of major depression (Tr. 347, 352-353).

A March 2005 Psychiatric Review Technique conducted by Leonard Balunas, Ph.D., found that Plaintiff experienced affective disorders, namely depression, and required a mental residual functional capacity assessment (Tr. 244, 247). The review further found Plaintiff's restrictions of activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace were *moderately* limited, but found no episodes of decompensation (Tr. 254). Dr. Balunas found Plaintiff was not significantly limited in most areas but *moderately* limited in the ability to: understand and remember detailed instructions; carry out detailed instructions; complete a normal workday and workweek without interruptions from psychologically based symptoms; and accept instructions and respond appropriately to criticism from supervisors (Tr. 258-259). Dr. Balunas concluded that Plaintiff is able to perform unskilled work (Tr. 260).

In October 2005, a second psychological examination found that Plaintiff reported suffering from "stress, depression, suicidal and schizophrenia" but could not recall the

specific dates of the diagnosis, only that they happened several years ago (Tr. 294). Plaintiff reported taking Depakote, Resparidal, and Wellbutrin, with side effects of weight gain (Tr. 294). Plaintiff reported no current problems with drugs or alcohol but admitted having a cocaine problem for most of her life, noting that she had received rehabilitation treatment three years ago (Tr. 294). Plaintiff also reported weekly church attendance, vacuuming, and daily meal preparation (Tr. 295). Plaintiff was observed talking frequently to a small teddy bear in her purse, at times ignoring questions from the examiner (Tr. 295). Plaintiff was also observed walking slowly and using a cane for assistance, but later walking quickly out of the building when her cab arrived (Tr. 295). Dr. Goergen noted that Plaintiff's responses were inconsistent with a function report Plaintiff previously completed regarding interests and complaints of illnesses, leading to the conclusion that Plaintiff exaggerated her presentation and exhibited low motivation. Dr. Goergen noted no history to suggest a multiple personality disorder or schizophrenia (Tr. 297). Plaintiff was diagnosed with malingering and a GAF of 60 (Tr. 297).

In December 2005, Dr. Balunas conducted a second Psychiatric Review Technique and found that Plaintiff experienced the affective disorder of major depression, accompanied with substance addiction disorders (Tr. 205, 208, 213). The review further found Plaintiff was *moderately* limited in activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace with no episodes of decompensation (Tr. 215). He noted that Plaintiff was briefly hospitalized in February 2005 for major depression and polysubstance abuse (Tr. 217). Dr. Balunas concluded that Plaintiff is able to perform

unskilled work (Tr. 221).

### C. Vocational Expert Testimony

VE Stephanee Leech classified Plaintiff's former work as a home health attendant as semiskilled at the heavy level of exertion (as performed); hostess as semiskilled, light; inventory clerk as semiskilled, medium; maintenance worker as unskilled, light; cleaner as unskilled, light; maintenance supervisor as semiskilled, light; meat cutter as semiskilled, heavy; preparation cook as semiskilled, light; housekeeper as unskilled, light; and gluer as unskilled, light (Tr. 402-403).[5]

The VE found that if the Plaintiff's allegation that she needed to keep her legs elevated above her heart were credited, she would be precluded from all work (Tr. 403). The VE found that, absent the elevation requirement, Plaintiff could perform her past work as a gluer (Tr. 403). The ALJ then posed the following question:

> "Restrictions of activities of daily living were moderately impaired. Difficulty in maintaining social function moderately impaired. Difficulty in maintaining concentration, persistence, or pace was moderate, moderately impaired. Episodes – there were no reported episodes of decompensation of extended duration. If we assume those restrictions would the claimant be able to perform her past relevant work?"

(Tr. 404). The VE found that based on the above restrictions**,** Plaintiff's moderate limitations

---

[5] 20 C.F.R. § 404.1567 (a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

of concentration, persistence and pacing would interfere with performance of her past work, with a clarification that the difficulty would be sustaining performance rather than actually performing (Tr. 404). The VE specifically noted that the ability to maintain concentration in conjunction with the physical restrictions would be the factor precluding all work (Tr. 405).

### D.     The ALJ's Decision

ALJ Moulaison found that although Plaintiff experienced the severe impairments of lingering injuries from gunshot wounds to her legs, depression and polysubstance use disorder, none of the conditions met or equaled an impairment listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 23). He found that "[w]hen the [Plaintiff]'s polysubstance use disorder is considered, the claimant retains the residual functional capacity [("RFC")] to perform medium exertional work" restricted by "moderate limitations in her daily living activities, social functioning and ability to concentrate" (Tr. 23). However, "[w]hen the [Plaintiff]'s polysubstance dependence disorder is *not* considered she retains the residual functional capacity to perform medium exertional work" (Tr. 24). He concluded that Plaintiff could perform her past relevant work as a hostess, inventory clerk, maintenance worker, cleaner, maintenance supervisor, preparation cook, motel housekeeper, or box gluer when her polysubstance dependence disorder is not considered, thus the disorder is a contributing factor material to the determination of disability (Tr. 24).

ALJ Moulaison found Plaintiff's allegations of disability "not supported fully in the medical record" based on "limited objective medical evidence, minimal abnormal clinical findings and the scant longitudinal treatment history" (Tr. 16). He observed that Plaintiff had

-11-

no treatments for lower extremity pain since her alleged date of disability, noting that she made no mention of leg pain when she saw a doctor in March of 2003 for bronchitis (Tr. 16). Citing the January 2005 consultative physical examination notes, he found that Plaintiff exaggerated her limitations, noting that she was observed ambulating without the use of an assistive device and a "grossly normal gait" (Tr. 16). He observed that the Plaintiff's regular activities were church attendance, housekeeping chores, "doing crossword puzzles" and meal preparation (Tr. 16).

Noting "scant formal mental health treatment," the ALJ observed that Plaintiff was noncompliant with her medication (Tr. 17). He also noted that although he had left the record open for the submission of records, "no records were submitted" supporting her allegation of psychiatric hospitalization (Tr. 17). The ALJ also observed that both her psychological evaluators opined that Plaintiff "appeared to attempt to exaggerate her presentation," with the second evaluation diagnosing Plaintiff with malingering (Tr. 18). He also noted that Plaintiff gave "multiple inconsistent statements and presentations at the consultative examinations," regarding the use of drugs and alcohol (Tr. 19). He determined that Plaintiff's allegations of greater pain and limitations are not fully supported in the medical record when taken as a whole. (Tr. 22).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. § 405(g); *Sherrill v. Secretary of Health & Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more

than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986) (en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health & Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she

can perform other work in the national economy. 20 C.F.R. § 416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir. 1984).

## ANALYSIS

Plaintiff argues that the administrative finding that her polysubstance abuse was a contributing factor material to her disability stands at odds with the great weight of evidence. *Plaintiff's Brief,* 6-8; *Docket* #9 (citing *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992)).  She notes that after February 2005, her treating records and consultive examinations otherwise omit any reference to a "polysubstance" abuse disorder. *Id.* at 8-10.  Furthermore, Plaintiff asserts the ALJ misinterpreted the record, and that the diagnosis of "polysubstance abuse" was a "rule out" diagnosis.  *Id.* at 10.

The Social Security Act provides that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(C).  The test for a contributing factor material to determining disability is whether the Plaintiff would still be disabled if she stopped using drugs or alcohol.  *See* 20 C.F.R. § 416.935(b)(1).

While Plaintiff is correct in the narrow sense that the treating records after February

2005 do not state that she experiences a "polysubstance abuse disorder," the treating source material contains numerous references to her past abuse of cocaine, crack cocaine, marijuana, alcohol and pain medication (Tr. 195, 300, 301, 309, 311, 317, 321, 335-36, 338). The ALJ's finding that Plaintiff experienced a "polysubstance abuse disorder" is therefore well supported by the record.

A review of the medical file at issue suggests that Plaintiff, rather than the ALJ, misinterpreted the evidence. The page at issue states as follows: "major depression, r/o bipolar / Polysub" (Tr. 340). In fact, the statement appears to indicate a diagnosis of polysubstance abuse *separate* from the diagnosis of depression ruling out bipolar disorder. Even, assuming *arguendo* that Plaintiff's interpretation is correct, the treatment notes from the same period by the same treating source contain two positive tests for cocaine along with the remark "major depression, rule out bipolar disorder; polysubstance abuse," suggesting that the earlier notes should be construed to state an independent diagnosis of polysubstance abuse (Tr. 335, 336, 340). These notes clearly indicate drug abuse and severely undermine Plaintiff's interpretation that the February 25, 2005, diagnosis ruled out polysubstance abuse.

Even construing Plaintiff's argument broadly with alleged mental impairments independent of polysubstance abuse, substantial evidence nonetheless easily supports the ALJ's finding. For example, Plaintiff's three reported suicide attempts in 2004 (Tr. 323), even when taken as true, stand at odds with the treating records and consultive examinations. The treating records show low GAF scores of 20 and 30 which occur within several weeks

-15-

of Plaintiff's admitted use of crack cocaine in February 2005 (Tr. 276, 311, 317, 342). After Plaintiff stopped abusing drugs and received treatment, the treating records illustrate an improved condition on medication, with GAF scores of 60 in both May 2005 and July 2005 (Tr.193, 195, 197, 297). This evidence is consistent with the consultive examination results and supports the ALJ's conclusion that Plaintiff's mental impairments stem from drug abuse. While the record presents a truly harrowing account of Plaintiff's physical and mental conditions and polysubstance abuse, this Court notes that ALJ's conclusion, in light of the treating records and the two sets of physical and psychological consultive examinations (likely due to the seriousness of Plaintiff's condition), is well supported by the record.

Nevertheless, this Court's conclusion recommending the grant of summary judgment to the Commissioner is not intended to trivialize symptoms of depression or polysubstance abuse. While a *de novo* review by this Court might result in a different decision, based on a review of this record as a whole, the ALJ's decision is well supported by substantial evidence.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  June 10, 2009

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 10, 2009.

S/G. Wilson
Judicial Assistant